**IN THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Kevin B. and Renata B., | : | |
| Individually and as Parents and | : | |
| Natural Guardians of Minor, | : | |
| F.B., | : | |
| *Plaintiffs*, | : | |
| | : | Case No.  2:23-cv-4765 |
| V. | : | |
| | : | |
| The Unionville Chadds Ford , | : | JURY TRIAL DEMAND |
| School District, Students TBD | : | |
| *Defendant*. | : | CIVIL ACTION-LAW |
| | : | |
| | : | |

**VERIFIED COMPLAINT**

Plaintiffs by and through their undersigned attorneys, bring this Complaint against the above-named Defendants, agents, and successors in office, to safeguard their rights under the United States Constitution, Federal Law, and laws of the Commonwealth of Pennsylvania, and in support thereof allege the following:

**PRELIMINARY STATEMENT**

1. F.B. is a twelfth-grade student, residing within the bounds of the Unionville-Chadds Ford School District (the "District"). He presently attends Unionville High School where he takes advanced placement ("A.P.") and honors classes.

2. On or around December 6, 2021, a female student made a report to the District that F.B. had written a threat on the bathroom wall, which stated: "10 8 21 Bullets will Fly" and that he threatened to rape her. The report was based on an anonymous Instagram direct message.

3. It is notable that at the time the female student made the report to the District that there was no credible evidence linking F.B. to any of the allegations.

4. In fact, F.B. denied all of the allegations.

5. On December 6, 2021, the District convened an informal disciplinary hearing. At the hearing, the District never proved nor determined that F.B. was responsible for any of the allegations.

6. It is notable that during the hearing, F.B. unequivocally denied the allegations.

7. Throughout the hearing, the District denied F.B. any procedural fairness, which included denying him access to the evidence against him, to have an attorney present, and when the District dismissed the stenographer in the middle of the hearing, to name a few of the many procedural violations.

8. Most importantly, the District denied F.B. any of his rights under Title IX and retaliated against him in violation of this statute and its implementing regulations.

9. Because the facts, circumstances, and allegations all involved sexual harassment, F.B. was entitled to protections under Title IX.

10. The District ignored the sexual harassment allegations and, instead, only focused on the terroristic threats in violation of 34 CFR 106.71. This regulation expressly prohibits charging a student with code of conduct violations when the facts and circumstances involve sexual harassment. The District ignored 34 CFR 106.71 by omitting the sexual harassment allegation and by only focusing on the latter charge. Per the Regulation, the District retaliated against F.B.

11. The District denied F.B. any Title IX process, whatsoever. Instead of offering F.B. with any Title IX process,  it took steps to illegally exclude him from school.

12. The District excluded F.B. from school even though it lacked any credible evidence that F.B. had engaged in the alleged conduct and that he presented a threat. In fact, the principal even admitted that he lacked evidence that F.B. was responsible for the conduct. Moreover, the District never determined that F.B. was responsible for any of the alleged conduct at its hearing.

13. Despite lacking any evidence, the District illegally excluded F.B. from school for seventeen days. The District illegally excluded F.B. for seventeen days after it denied F.B. any procedural due process, after it denied him any Title IX process, and after the principal admitted that he had no evidence that F.B. engaged in any of the alleged conduct.

14. The District's intentional discrimination, deliberate indifference, denial of F.B.'s right to procedural due process, together with its similar tortious and discriminatory conduct are the direct and proximate cause of F.B. and his Parents' damages.

## JURISDICTION AND VENUE

15. This court has jurisdiction under 28 U.S.C. §1331, as the causes of action contained herein invoke federal question jurisdiction, as Plaintiffs bring claims arising under federal law.

16. This court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

17. Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) because the events that give rise to the claims in this action occurred in this District.

## PARTIES

**Plaintiffs:**

18. Plaintiffs, Kevin B. and Renata B., individually and as Parents and Natural Guardians of

    Minor,  F.B., and the student, F.B. (Collectively, the "Plaintiffs"). Plaintiffs reside at 250

    Harvey Rd., Chadds Ford, PA 19317.

**Defendant:**

19. The Defendant, Unionville Chadds Ford School District (the "District" or the

    Defendant") is body politic and local education agency believed to be doing business at

    740 Unionville Road, Kennett Square, Pennsylvania, 19348.

## FACTUAL ALLEGATIONS

20. F.B. is a twelfth-grade student, residing within the bounds of the Unionville-Chadds Ford

    School District (the "District"). He presently attends Unionville High School where he

    takes advanced placement ("A.P.") and honors classes. In fact, for most of the time that

    F.B. was enrolled in the District, he took A.P. and honors classes. Notably, F.B. has no

    history of arrests nor any major disciplinary infractions at school.

21.  On or around October 8, 2021, a cryptic message was written on the bathroom wall at

    Unionville High School by a person, who at the time, was unidentified. The message

    stated: "10 8 21 Bullets will Fly."

22. There was no evidence at any time that F.B. wrote this message on the bathroom wall,

    including video footage. In fact, there was nothing at all to link F.B. to the message.

23. Subsequently, on or around December 6, 2021, a female student received direct messages from an Instagram user account "Georg Gerhart Eisler." The direct messages were threatening and sexual in nature, referring rape.

24. The message threatened the female student, "C you on the bus."

25. The female student responded by acknowledging that the messages were scaring her, and asked, "Who is this?" "Georg Gerhart Eisler" responded by sending a blurry picture of a curly hairline, to which the recipient responded, "Is this F.?," referring to F.B., but addressing him only by his first name, which is distinctive.

26. "Georg Gerhart Eisler" responded "You got me!" "Georg Gerhart Eisler " continued by claiming that he was the same person who left the threatening message on the bathroom wall and claiming his motive to be canceling the football game.

27. F.B. has both curly hair and rides the same bus as the female direct message recipient, which explains why she may have guessed his name. There is nothing in the female student's testimony to suggest that it was anything other than a circumstantial conjecture; notably, she made no accusation against F.B.

28. F.B. affirms that he did not previously, nor does he now know, the recipient of the Instagram direct messages. While he had seen her on the bus and at school, they were not acquainted, not connected on social media, nor had they ever spoken. In fact, F.B. does not use social media. Prior to the allegations, he did not even know her name. What is more, F.B. does not now, nor has he ever, had a social media account, including Instagram.

29. At no point, did either party exchanging Instagram direct messages verify that "Georg Gerhart Eisler" was, in fact, F.B.

30. In fact, F.B. categorically denied all of the allegations.

31. Without any evidence to indicate that F.B. was responsible for the alleged conduct, Dr. Conley concluded, at the informal hearing, that "based on what [F.B.] told us today, it would be disruptive for him to return to school." Curiously, what F.B. told the District was that he denied being responsible for the allegations; statements, which, in no way, can be said to be disruptive to the learning environment.

32. The District never found F.B. to be responsible for violating the District's Code of Conduct at the hearing. Nonetheless, the District still punished him.

33. Notably, the District brought school disciplinary charges against F.B. that did not involve sexual discrimination during the course of what should have been a Title IX proceeding. First, the allegation that a rape threat was made triggered the Title IX protections for both parties.

34. Second, 34 CFR 106.71 specifies that "Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by title IX or this part, constitutes retaliation."

35. As applied here, both accusations stemmed from the direct message, which the female student reported on December 6, 2021. In other words, the same message allegedly threatened rape and referenced the "bullets will fly" terroristic threat. Despite the fact that the act of sending the message involved both sexual harassment and terroristic threats, the District only elected to pursue the latter allegation. Upon information and belief, the

District only pursued the terroristic threat allegations to side step its Title IX obligations and procedures.

36. By sidestepping its Title IX obligations, the District was able to deny F.B. his Title IX procedural protections, which include, *inter alia*, protections from immediate removals without the District conducting a threat assessment, denying F.B. the right to be notified of the specific charges against him, to receive a summary of the evidence against him, denying F.B. an advisor of his choice, including his attorney, and punishing F.B. without a finding of responsibility.

37. That the District and Dr. Conley elected to forgo any of the Title IX procedures and, instead, decided to charge F.B. only with making a terroristic threat, shows, beyond all doubt, that the District retaliated against F.B. per 34 CFR  106.71.

38. Despite not finding that F.B. was responsible for the alleged conduct, Dr. Conley unilaterally and against the weight of evidence, decided to remove F.B. to an AEDY (alternative education for disruptive youth) based on the perception that F.B. remaining in the District would be "disruptive."

39. The District's justification for placing F.B. in an AEDY is not supported by Pennsylvania law.

40. First, as a threshold matter, 24 P.S. § 19-1902-C(5) provides that an AEDY program may only be used when all other established methods of intervention and/or discipline have been exhausted. As applied here, this was the first and only disciplinary allegation the District ever made against F.B. As such, the District failed to exhaust established methods of intervention and discipline.

41. Second, the evidence did not support placing F.B. at an AEDY, as none of the criteria were met.  24 P.S. § 19-1902-C(5) specifies that school districts may only place students in an AEDY who 1.)  Pose a clear threat to the safety and welfare of other students or the school staff;  2) Create an unsafe school environment; or 3) Whose behavior materially interferes with the learning of other students or disrupts the overall educational process; and who 4) Exhibit to a marked degree any or all of the following six criteria for placement: a) Disregard for school authority, including persistent violation of school policy and rules., b) Display or use of controlled substances on school property or during school-affiliated activities. d) Violent or threatening behavior on school property or during school-affiliated activities. e) Possession of a weapon on school property, as defined by the Crimes Code at 18 Pa.C.S. § 912 ; f) Commission of a criminal act on school property or during school-affiliated activities.; and g) Misconduct that would merit suspension or expulsion under school policy.

42. None of these criteria were met. The District lacked credible, competent evidence that F.B. engaged in any conduct that would warrant a placement in an AEDY. The District made the determination to place him in an AEDY even though it never found him responsible for any of the alleged conduct. Again, he denied all of the allegations. Nonetheless, in the absence of any evidence, the District concluded that F.B. should be placed at the AEDY.

43. The District later learned that the messages were sent by a student who attends school in another school district. This was a fact that was corroborated by the East Marlborough Police Department, based on internet forensic analysis.

44. Around December 10, 2021, the East Marlborough Police Department fingerprinted F.B. The Police compared his fingerprints to the ones found on the bathroom wall where the threat was written. The Police concluded that F.B.'s fingerprints did not match; therefore, clearing him. More to the point, the police concluded that F.B. was not responsible for the threats that were written on the bathroom wall.

45. On January 7, 2022, the District spoke with the police who confirmed that F.B. did not write the threat on the bathroom wall. This was the first time that the District bothered to check with the police about the allegation.

**As to the District's Unlawful Suspension of F.B. and its Numerous Procedural Violations:**

46. On December 6, 2023, Parents met with the Principal and other District administrators after receiving notice of the allegations.

47. During the December 6, 2021, meeting with the District officials, the principal stated, "I have a student that is afraid to go on the bus because of the rape comment. . . "We have two allegations." The principal, however, conceded that he "did not know if [F.B.] was responsible." Without explanation, the principal and the District did not pursue the rape allegations and did not offer F.B. any Title IX process. Nonetheless, without any regard to F.B.'s rights, the District continued to exclude F.B. from school.

48. Based on this limited evidence, the District initially excluded F.B. from school on December 7 and December 8 without an accusation of wrongdoing or a suspension.

49. Around 4:30 PM on December 8, 2022, (after school hours) F.B.'s parents received a suspension notice by email. The notice contained a general accusation of wrongdoing, which did not include the specific offense alleged nor the basis for the allegations. The letter stated that "…F.B. has been suspended from school for Level 4 Offense. Criminal

Behavior conduct that, if committed by an adult, would constitute a felony or misdemeanor under the prevailing laws of the Commonwealth of Pennsylvania."

50. During the hearing, the Principal testified that Vice Principal Patrick Clark had contacted K.B. on December 8 and requested that F.B. stay out of school voluntarily. The principal further testified, "We had asked Mr. [B.] to work with us, but he refused, so, in turn, we suspended [F.]."

51. The allegation set forth in the notice of suspension was not specific as to ascertain the full extent of what F.B. was accused of, nor did it specify the basis of the allegation. In the section of the suspension notice that specifies the reason for suspension, the District did not check off the section, ". . . making a terrorist threat (see Policy 218.2)." This logically led F.B.'s parents to conclude that the District was not suspending F.B. for making a terrorist threat, but, rather, for allegedly threating the female student with rape.

52. The right of notice of "the charges" demands a certain degree of specificity to be effective. Specificity of notice serves to inform the student and parents of the kinds of issues they will need to address and how to prepare a defense. *Navato v. Sletten*, 560 F.2d 340 (8th Cir.1977). Furthermore, specific notice confines the scope of the hearing to the initial charges. *Gonzales v. McUen*, 435 F. Supp. 460, 469 (C.D.Cal. 1977).

53. The suspension notice stated that Ford's consequences are as follows: 1) Conference with student and parents, 2) Referral to appropriate school service, 3) Out of school suspension (10 days), and 4) Contact law enforcement authorities – criminal prosecution.

54. Furthermore, the suspension notice contained no claim nor basis for an "emergency exception"; F.B. posed no threat of immediate physical danger or extreme disruption requiring immediate exclusion from school without hearing. The District did not notify

the Parents that they had reason to believe that F.B. was a threat to others or that it had

reason to believe that if he were allowed to return to school, he would be extremely

disruptive. Furthermore, the District provided no explanation, whatsoever, for the

immediate removal.

55. The United States. Supreme Court held that suspension hearings must precede

suspension, unless an emergency necessitates, in which case the hearing is to be held no

later than three days after the student is excluded. *Goss v. Lopez*, 419 U.S. 565, (1975). In

the instant matter, the District never convened a hearing to effectuate an immediate

removal with the three-day timeframe.

56. On December 9, 2021, K.B. wrote to the District, "The U.S. Supreme Court has held that,

in connection with a suspension of 10 days or less, that the student be given notice of the

charges against him and, if he denies them, an explanation of the evidence the authorities

have, *Goss v Lopez*. We are invoking that right to have an "explanation of the evidence."

The District failed to respond to the request. The District did, however, respond with an

email, stating that the law does not require it to provide the information that Parents

requested. The District response does not comport with *Goss v. Lopez*.

57. On December 9, K.B. also requested that the family's attorney be present at the hearing.

One the main reasons Parents made the request to have their attorney present was because

the District informed them that F.B. was being accused of threatening to rape a female

student. In other words, the District led Parents to believe that the allegations were based

on a Title IX claim pertaining to sexual harassment. Because the allegations pertained to

Title IX, Parents and F.B. wanted to exercise their right under Title IX to have an

advocate of their choice, which, in this case, was a lawyer. The District denied their request to have a lawyer present at the hearing.

58. The informal hearing was held by the principal on December 13, 2023,  F.B.'s fifth day of exclusion from school. At the hearing the District placed F.B. in an "alternative school service" and excluded him from school indefinitely pending "proof of innocence."

59. Expulsion is exclusion from school by the governing board for a period exceeding ten school days or for an indefinite period, and may be permanent removal from the school rolls. 22 Pennsylvania Code § 12.6(2). Expulsions require a formal hearing, along with other procedural rights, such as being represented by an attorney, to know the identity of the accusers, to cross examine the accusers, and to a public hearing. 22 Pennsylvania Code § 12.8.

60. The female student and a second female student, both of whom reported the direct message exchange to the District, did not attend the hearing. As such, F.B. had no way to confront them.

61. The District interfered with the Plaintiffs' ability to participate in the hearing. The District never sent them *written* questions from the Plaintiffs. Additionally, the District did not allow the Plaintiffs the opportunity to prepare any cross examination or questioning, as the District denied the Plaintiffs access to the evidence prior to the hearing. Furthermore, the District did not provide timely notice of the specific allegations, further interfering with their ability to prepare for the hearing. By way of further example, the District denied F.B. the ability to cross examine the witnesses.

62. The District made its decision to exclude F.B. from school without cross-examination of the witness testimony.

63. The District had a stenographer present at the informal hearing. However, the District dismissed the stenographer partway through the informal hearing. Because the District dismissed the stenographer early, it prevented F.B.'s witness, a cyber crimes expert from having his testimony transcribed. Absent this testimony, the District did not consider exculpatory and favorable evidence for F.B.

64. The principal also delayed his testimony until after he made the alternative education placement decision.

65. There was no finding of fact at this hearing to conclude that F.B. was responsible for any of the alleged misconduct. Furthermore, there was no finding of fact that F.B.'s, "…presence in his normal class would constitute a threat to the health, safety, or welfare of others," as required by Pennsylvania law for exclusion from school, up to fifteen days. 22 Pa. Code § 12.6.(d).

66. Following the informal hearing the District did not issue a written "finding of facts, sanctions, and reasons." The District did not make a formal finding that there was substantial evidence that F.B. was responsible for the misconduct he was accused of and the standard of evidence applied. Nor did the District issue a formal notice of sanctions imposed, duration of sanctions, and conditions for reinstatement.

67. The District did not timely convene an expulsion hearing. The District, nonetheless, subjected F.B. to alternative school placement and indefinite exclusion from school.

68. The District did not provide any form of written explanation of the hearing findings, findings of fact, disciplinary sanctions imposed, duration of sanctions thereof, nor provisions for reinstatement.

69. The District has also refused to provide Parents with a copy of the hearing transcript and witness testimony, after filing proper request and allowing for the statutory forty-five-day response period. *See* 20 U.S.C. § 1232g; 34 C.F.R. § 99.30.

70. Following the disciplinary hearing and meeting with the Parents on December 13, the District decided that it was going to continue the disciplinary removal of F.B. from school.

71. Though the female student reported F.B. for sexual harassment, the District failed to offer any Tilte IX procedures.

72. K.B. indicated to District employee Dr. Conley that F.B. had a right to remain in his current educational placement absent the District formally suspending him. K.B. also requested that the District provide F.B. with the Title IX process, that F.B. be apprised of the specific allegations against him, that they receive evidence, and that they have a right to an attorney at any hearing.

73. Dr. Conely responded by informing Parent that it was his and the District's objective to remove F.B. from school. In fact, Dr. Conely admitted that he "wanted [F.B.] removed from school from the jump," referring to the start of the investigation.

74. Dr. Conley further admitted that he "did not know if F.B. was responsible." Nonetheless, Dr. Conley suspended F.B. from school in the absence of evidence and a lack of any finding that he was responsible for the misconduct by a preponderance of evidence. Dr. Conley's statement that he "did not know" is contrary to the District policy of basing its decision on a preponderance of the evidence.

75. In response to Parent requesting that F.B. remain in his current educational placement, Dr. Conley indicated that the District was suspending F.B.

76. More specifically, Dr. Conley and the District responded to Parent's request for a Title IX process and for F.B. to remain at school, pursuant to the Title IX Regulations, by suspending F.B. In other words, the District suspended F.B. because Parent sought to enforce his rights under Title IX. In fact, Dr. Conley responded, "the father refused to keep Ford out of school voluntarily, so, in turn, we suspended him." This remark shows that the District's conduct was clearly retaliatory.

77. At no point did the District provide F.B. with any Title IX disciplinary process. The District never convened a Title IX-compliant hearing, did not offer F.B. a resolution process, did not offer him an administrative disposition, did not provide him with evidence, did not thoroughly investigate the allegations, and did provide him with equitable treatment. Instead, the District presumed his guilt and immediately removed him from school.

78. The District seems, in part, to have concocted a pretextual justification for removing F.B. based on a putative threat. However, there was no justifiable emergency for removing F.B. The District jumped to its desired outcome based on an uninvestigated Instagram message.

79. The Title IX emergency exceptions do not contemplate removing students from school "in abundance of caution." Rather, the District needs to be able identify an actual threat; not speculation based on threadbare evidence, based on an individualized threat assessment. This standard applies whether or not the removal is based on a Title IX issue.

80. It should be stressed that the District suspended F.B. from school even though there was no finding that he violated the code of conduct.

81. As a result of the District forgoing any process under Title IX and Chapter 12 of the Pennsylvania School Code, it excluded F.B. from school for seventeen days.

82.  On or about January 6 , 2022, police charged another juvenile student as responsible for the "Georg Gerhart Eisler" user account and sending the harassing and incriminating messages. That student pleaded guilty to numerous criminal charges associated with the Instagram messages.

83. Again, the District failed to thoroughly investigate the messages. Instead, it relied on the police to conduct the investigation. Curiously, the District did not consider the fact that one of the "Georg Gerhart Isler" accounts had an actual photograph of the person who sent the messages. Upon information and belief, the District never investigated the account. It is notable that the person who sent the Instagram messages is a well-known public figure in the Philadelphia area, who has received considerable press coverage for his political activity. Despite the fact that the sender of these messages is well known, the District, upon information and belief, did not take steps to properly investigate the incident to uncover the true identity of the sender.

84. According to the Unionville principal this juvenile is behind some twenty-five variants of the "Georg Gerhart Eisler" username and related nefarious user accounts, used in an extensive campaign of sexual, racial, religious and other harassment, including death threats, against the students at Unionville High School over an extended period.[1]

---

[1] Around this time, The District had gathered extensive text message records of this harassment, which had been in its possession at the time of the informal hearing. The District, however, did not reveal these messages to the Plaintiffs. Dr. Connely admitted that when he opened the investigation, he said "let's hold the phone here," seemingly indicating that he believed that the District was not on the correct path with the investigation and that they were wrong for targeting F.B. Nonetheless, he failed to release the exculpatory evidence to the Plaintiffs. In one of the text message exchanges, the student replied to Georg Gerhars Eisler, "u said ur Thomas Holmes," which was clearly exculpatory.

85. Curiously, the District did not refer F.B. to the multi-disciplinary, threat-assessment team for an individualized threat assessment, which is required under Pennsylvania law and District policy. Had the Threat Assessment Team been convened, clearly the scant evidence would have shown not only that F.B. was not a threat, but that the evidence did support the underlying accusation. Furthermore the scant evidence shows that F.B. did not pose an actual threat and disruption to the learning environment. In fact, when K.B. asked Dr. Conley if he or anyone at the District actually conducted a threat assessment, Dr. Conley responded that he " did not want to put [F.B.] through that."

86. At the disciplinary hearing the District presented two choices: for an alternative education and indefinite suspension or placement in an alternative school for educationally disruptive youth. In this case, the indefinite suspension was an expulsion, as the District was removing F.B. from school, indefinitely. 22 Pennsylvania Code § 12.6(2).

87. The expulsion would have placed F.B. at an AEDY. Here, the District has presented F.B. with a faustian bargain: remain in the most-restrictive environment by way of online school or attend the AEDY.

88. From December 9, the day after the suspension notice, until December 13, the day of the informal hearing F.B., was excluded from school and denied access to online classes. From December 7 to December 8, the District excluded F.B. from school. During this time, the District provided him with online classes. Then, again, from December 9 through December 13, the District excluded him from school and did not allow him to attend online classes. Then, from December 14 to January 7, the District continued the online classes, while excluding him from in-person learning.

89. On January 7, 2022, the District confirmed that the police investigation exonerated F.B.

90. F.B. eventually returned to school on January 11, 2022, after the efforts of this Firm put the District on notice that it had unlawfully suspended F.B.

91. It should be noted that these online classes were inferior to the in-person classes. As above indicated, F.B. is a strong student who takes A.P. and honors courses. The District denied him access to this in-person curriculum and to rigorous instruction.

92. During the suspension, when F.B. routinely arrived at school for proctored testing, the District did not search his bag, nor did it have any police or security personnel escort him to his session. It also allowed him to roam the halls unescorted when other students were present, clearly indicating that they did not consider him a risk, let alone an immediate risk.

93. Even though F.B. attended online classes, the instruction was woefully inadequate, and he quickly fell behind in his challenging A.P. and honors classes.

94. During his online classes, F.B. was isolated from his same-age, typically developing peers; he did not receive the benefits of working with his teachers; he was denied access to class discussions and group work with peers; and he did not participate in normal high school social life. Due to the isolation of online instruction, F.B. missed the benefits of group instruction and peer-based learning. On multiple occasions, F.B. could not attend class because his teachers forgot to allow him access or he could not ask questions because they forgot about him being online. Furthermore, he had difficulty keeping up under the circumstances and his grades fell.

**As to the District's Flawed Title IX Investigation:**

95. On January 19, 2022, Parent filed an internal Title IX and cyberbullying complaint with the District for violating F.B.'s rights under Title IX and the District's bullying/cyberbullying policy 249-AG-0. (Exhibit "A.").

96. Unsurprisingly, on July 12, 2022, the District determined that the Title IX  and bullying/cyberbullying violations were unfounded. (Exhibit "B.").

97. Parent, on July 12, 2022, Parent timely appealed their decision. (Exhibit "C."). The District denied the appeal.

98. On June 8, 2023, Parent filed an additional internal Title IX complaint with the District

99. for violating F.B.'s rights under Title IX. (Exhibit "D.").

100.   Unsurprisingly, on February 8, 2023, the District determined that the Title IX violations were unfounded. (Exhibit "E.").

101.   K.B., on March 20, 2023, timely appealed their decision. (Exhibit "F."). The District denied Parent's appeal.

102.   In all of the above investigations, the District failed to interview any of the four witnesses whose written testimony was used at the suspension hearing. Furthermore, the District found that every single one of the extensive list of questions posed for cross examination was not relevant.

103.   The District's self-serving determination that it did not violate F.B.'s rights under Title IX  and the anti-bullying/cyberbullying policies, further demonstrates its deliberate indifference and intentional discrimination against F.B.

104.   The conduct of the District and all defendants is the source of F.B.'s and Parents' harm and concomitant damages.

105.    This civil complaint now follows.

**COUNT 1**
**SEX AND GENDER DISCRIMINATION UNDER TITLE IX**
*K.B. and R.B. o/b/o F.B. v. the Unionville Chadds Ford District*

106.    Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this

complaint and incorporate them herein.

107.    Title IX, provides that "[n]o person . . . shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any

education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

108.     The District is a federal funds recipient.

109.    At all times relevant, F.B. is a student, who is eligible to attend school in the District.

Furthermore, at all times relevant, F.B. attended school in the District. Specifically, F.B.

has attended, and continues to attend, the school in the District from January 2019

through the date of filing.

110.    The District subjected F.B. to sex- and gender-based discrimination, together with a

hostile learning environment based on the same, when:

   a.   The District subjected F.B. to a hostile learning environment, intentional

        discrimination, together with deliberate indifference based on his sex and gender.

   b.   This discriminatory treatment shocks the conscience. Furthermore, the

        discriminatory treatment which, to a reasonable person, was so severe, pervasive,

        and objectively offensive that it denied F.B. meaningful, equal educational access

        to his education.

   c.   Here, a then-unknown, out-of-district student, made a fake social media post,

        which alleged that F.B. threatened to rape a female classmate. Students at

Unionville High School then presumably, and upon information and belief, disseminated this information to other classmates and staff. Central to this allegation is that F.B. is a rapist and a sexual predator. This plays on the stereotype that he, as a young man, is a threat to his female classmates. Being accused of being a rapist and a sexual predator is one of the most damaging and harmful things of which to accuse a male. It is a stereotype that is unique to the male sex and/or to persons who identify as males/boys. Compounding the harm is the fact that F.B. did not make this statement; nor, for that matter, is a rapist.[2]

d.  This rumor has spread with students and staff. F.B. recounts that the allegations have branded him with the badge of stigma; that, upon information and belief, he is now viewed as a rapist.

e.  The harm has proven to be both severe and pervasive as pleaded in the Factual Allegations and as herein incorporated.

f.  On December 6, 2021, the harm reached its nadir when the District extracted F.B. from his classroom and escorted him to the Principal's office. During this time, the District had called the police. Many of the other students and staff saw the police in the presence of F.B.

g.  The District subsequently immediately and indefinitely suspended F.B. from school based on the rumors and the pernicious stereotype of him being a rapist. The District, here, convened a hearing, where it subjected him to repeated, humiliating accusations that he is guilty of threatening to rape a female classmate. Again, these allegations were based on rumors and harmful stereotypes about men

---

[2] Upon information and belief, the female student concluded that the rape threat must have originated with a male student. The presumption that it must have been a male student who made the rape threat is based on stereotyping.

being rapists. There were no allegation that he was guilty of any wrongdoing, not by the witnesses, the police, nor the District – yet he was excluded from school immediately.

h.   The District specifically denied him access to his educational benefits based on negative male stereotypes.

i.   The allegation that a person is a rapist is unique to men and male-identifying persons.

j.   Here, the District's invidious treatment *barred* F.B. *at the schoolhouse gate* specifically based on his sex and gender.

k.   The District has not taken adequate steps to remediate the harm. His classmates and staff still treat him differently, as they view him as a threat. He has since faced ostracism based on these allegations.

l.   The District's refusal to adequately address these harms has only further compounded the injury.

111.   The District's deliberate indifference to the ongoing sex- and gender-based discrimination has denied F.B. the benefits of his education. As such, the District's conduct is the direct and proximate cause of the Plaintiff's damages.

112.   Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

### COUNT 2
### TITLE IX RETALIATION
*K.B. and R.B. o/b/o F.B. v. the Unionville Chadds Ford District*

113.   Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

114.    The District retaliated against F.B. and Parents for utilizing or attempting to utilize the District's Title IX process. More specifically:

   a.  **Protected Activity:** The Plaintiffs had engaged in a protected activity when they participated in/attempted to participate in the Title IX investigation and hearing process.[3]

   b.  **Adverse Action**: After K.B. requested that the District comply with the Title IX procedures, including allowing F.B. to remain in his current educational placement, the District took adverse action. Here, District employee Dr. Conley informed K.B. that the District was suspending F.B. because K.B. requested that F.B. remain in his current educational placement.

   c.  The District's adverse action is the type of conduct that "might have dissuaded a reasonable [person] from making or supporting a charge of discrimination" – see *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006).

   d.  **Causation:** The District and Mr. Conley suspended F.B. from school directly in response to K.B. 's requests that the District simply follow the law.

115.    The District further retaliated against F.B. when it violated 34 CFR  106.71. This Regulation affirms, "Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or  sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of  sexual harassment, for the purpose of interfering with any right or privilege secured by title IX or this part,

---

[3] The Plaintiffs further engaged in a protected activity when on December 8, 2022,  K.B. protested that the District subjected K.B. to unequal treatment by asking that he voluntarily exclude himself from school absent a formal suspension.

constitutes retaliation." In the instant matter, the District retaliated against F.B. when it only pursued the terroristic threat charges to the exclusion of the sexual harassment charges, even though both allegations stemmed from the same facts and circumstances By sidstepping the sexual harassment charges, the District concocted a pretextual justification to forgo its obligations Under Title IX. The District's decision to forgo its Title IX obligations denied F.B. his procedural rights under this statute. To that end, by denying F.B. his Title IX procedural protections, the District excluded F.B. from in-person learning at school.

116.    By suspending F.B. in direct response to K.B.'s request for the District to follow the Title IX procedures, the District retaliated against the Plaintiffs.

117.    The retaliation has chilled the F.B.'s ability to freely and fairly participate in his education and the Title IX investigation process.

118.    The retaliation excluded F.B. from school for seventeen days. (This included the District excluding F.B. for five days prior to the hearing, three days after the suspension notice, and for twelve days after the hearing).

119.    The retaliation is the source of Plaintiffs' damages.

120.    Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

### COUNT 3
### TITLE IX--Erroneous Outcome
*K.B. and R.B. o/b/o F.B. v. the Unionville Chadds Ford District*

121.    Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

122.    Under the Erroneous Outcome theory, a plaintiff "must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding . . . [and] also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Powell v. St. Joseph's Univ.*, 2018 U.S. Dist. LEXIS 27145 at 19.

123.    The Defendant District subjected F.B. to a disciplinary proceeding, as pleaded in ¶¶ 46-94.

124.    The Plaintiffs have demonstrated, beyond all doubt, that the District's outcome in the disciplinary proceedings were exceedingly inaccurate. Again, the District removed F.B. from school without any evidence of him engaging in the threatening behavior, and without a finding that he violated the code of conduct. In fact, another student from another school district was the source of the threat.

125.    The Plaintiffs have shown several procedural errors in the discipline process, as pleaded in ¶¶ 46-94.

126.    The District's conclusion and predetermined results were contrary to weight of the evidence; removal; school without there being a true emergency; limited opportunity to present case; failed to follow exculpatory leads; and failed to disclose exculpatory evidence. Notably, the District rushed through its investigation and summarily removed F.B. from school, even though there was no evidence connecting him to the threat. The District failed to thoroughly investigate the Instagram threat. Had the District actually investigated the Instagram message, it would have easily found that a student from another school district sent the message.

127.   The outcome was the result of gender bias based on the stereotype of men being more

prone to sexual violence.

128.    The outcome involved the Plaintiff from being illegally denied access to his

education and to a fair process. Again, the District removed F.B. from school based on a

putative, yet, uninvestigated, threat. As a result, the District denied him access to

in-person learning for seventeen days.

129.   As a result of the District's rushed process, it gave F.B. two options, both of which

denied him access to his education at Unionville High school: online instruction or an

expulsion to the AEDY.

130.   The District's deliberate indifference to the ongoing sex- and gender-based

discrimination and Title IX process denied F.B. the benefits of his education. As such, the

District's conduct is the direct and proximate cause of the Plaintiff's damages.

131.   Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in

the prayer for relief.

### COUNT 4
### FAILURE TO FOLLOW TITLE IX PROCEDURES RESULTING IN DISCRIMINATION
*K.B. and R.B. o/b/o F.B. v. the Unionville Chadds Ford District*

132.   Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this

complaint and incorporate them herein.

133.   The Title IX implementation Regulations set forth the procedures LEA's are required

to follow when addressing a sexual harassment complaint. 34 C.F.R. 106 *et seq*.

134.   **Violation of the  34 CFR  106.71 regarding retaliation and discipline:** 34 CFR

106.71 affirms, "Intimidation, threats, coercion, or discrimination, including charges

against an individual for code of conduct violations that do not involve sex discrimination

or  sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or  formal complaint of  sexual harassment, for the purpose of interfering with any right or privilege secured by title IX or this part, constitutes retaliation." In the instant matter, the District retaliated against F.B. when it only pursued the terroristic threat charges to the exclusion of the sexual harassment charges, even though both allegations stemmed from the same facts and circumstances. By sidestepping the sexual harassment charges, the District concocted a pretextual justification to forgo its obligations under Title IX. The District's decision to forgo its Title IX obligations denied F.B. his procedural rights under this statute. To that end, by denying F.B. his Title IX procedural protections, the District excluded F.B. from in-person learning at school.

135.   **Violation of the emergency removal provision:** 34 C.F.R. 106 required the District to determine if there was an immediate threat posed by F.B., arising from the allegations of sexual harassment.[4] The Regulation mandates that the District provide F.B. with the opportunity to immediately challenge the removal. The District, however, rushed to its conclusion that it was removing F.B. without giving him the opportunity to respond to the allegations, nor did it provide him with any explanation for why he was being removed. The District did reach its conclusion not based on any evidence and, at no point, demonstrated that F.B. posed an immediate threat. Again, another student from another school district sent the offending message. The District's violation of this Regulation denied F.B. access to his education.

136.   **Violation of the disclosure of evidence provision:** The District failed to disclose all of the evidence, as pleaded in ¶¶ 7 and 61. 34 C.F.R. 106.

---

[4] The District's efforts to limit the scope of the Title IX allegations were retaliatory.

137.   The District violated the Title IX regulations by treating F.B. responsible without

following the Title IX Regulations.

138.   The District subjected F.B. to disciplinary sanctions without going through any of

Title IX's processes. 34 C.F.R. 106 describes a voluntary resolution process and an

administrative disposition process. The District essentially determined F.B.'s

responsibility without engaging in this process. The District subsequently imposed

sanctions without following the resolution procedures set forth in  34 C.F.R. 106.

139.   The District failed to offer F.B. a hearing that complied with the Title IX procedures.

34 C.F.R. 106 required the District to either provide F.B. with a Title IX hearing process

or a resolution process prior to making any determination or administering any

punishment. Again, the District offered F.B. no process and unilaterally removed him

from school.

140.   The District violated the Regulation's provision, which asserts, "Every determination

regarding responsibility must be based on evidence, not on assumptions about

respondents or claimants." 34 C.F.R. 106.

141.   The decision maker failed to provide any written evidentiary basis for the sanctions.

34 C.F.R. 106.

142.   The District failed to provide F.B. with equitable treatment. 34 C.F.R. 106 required

that the District not predetermine F.B.'s responsibility. The District violated this

Regulation when it determined that F.B. was responsible, or, at least should be punished.

The Regulation also required that the District treat F.B. equally with the Complainant.

However, the expedited removal and presumption of guilt are anything but equal

treatment.

143.    Moreover, a reported rape threat triggered F.B.'s Title IX rights, as he was the

respondent. This included the right to not be removed on an emergency basis without an

individualized threat assessment and a finding that he represented an immediate threat.

Additionally, F.B. had the right not to be punished without a finding of responsibility for

violating the code of conduct. The District, however, failed to respect and adhere to F.B.'s

Title IX rights. Furthermore, the District filed charges against him that did not involve

sexual discrimination for the purposes of denying his Title IX rights, which is retaliation.

The District further denied F.B.'s Title IX right to be represented by an advisor of choice,

including an attorney, at the hearing.

144.    The District's refusal to follow any of the Title IX procedures, together with their

deliberate indifference to these procedures, is the direct and proximate cause of the

District excluding F.B. from his education and of his damages.

145.    Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in

the prayer for relief.

### COUNT 5
### 42 U.S.C. § 1983--Denial of Equal Protection
*K.B. and R.B. o/b/o F.B. v. the Unionville Chadds Ford District*

146.    The Plaintiffs  hereby reallege all matters set forth in the preceding paragraphs of this

complaint and incorporate them herein.

147.    Defendants deprived Plaintiff of his  rights and privileges secured to him by the

Fourteenth Amendment by denying him equal protection of the law by denying him the

right to attend school.

148.    The District is a federal funds recipient.

149.    The District denied F.B. equal protection of the law by denying him the right to attend

school based on his sex and gender when:

a.   The District denied F.B. access to school based on rumors and harmful

stereotypes that F.B., as a male student, was a rapist.

b.   Here, students made a fake social media post, which alleged that F.B. threatened

to rape female classmates. Students then disseminated this information to other

classmates and staff. Central to this allegation is that F.B. is a rapist and a sexual

predator. This plays on the stereotype that he, as a young man, is a threat to his

female classmates. Being accused of being a rapist and a sexual predator is one of

the most damaging and harmful things of which to accuse a male. It is a

stereotype that is unique to the male sex and/or to persons who identify as

males/boys. Compounding the harm is the fact that F.B. did not make this

statement; nor, for that matter, is a rapist. F.B., though a male, considers himself

to be a feminist. F.B. recounts that the allegations have branded him with the

badge of stigma; that he is now viewed as a rapist.

c.   The harm has proven to be both severe and pervasive. On December 6, 2021, the

harm reached its nadir when the District suspended F.B. from school based on the

rumors and the pernicious stereotype of him being a rapist. The District, here,

convened a hearing, where it subjected him to humiliating accusations that he is

guilty of threatening to rape a female classmate. Again, these allegations were

based on rumors and harmful stereotypes about men being rapists.

d.   Though no evidence was adduced to show that he was guilty of anything, the

District excluded him from school based on this stereotype and false allegation.

    e.   The District specifically denied him access to his educational benefits based on negative male stereotypes.

    f.   The allegation that a person is a rapist is unique to men and male-identifying persons.

    g.   The District's invidious treatment *barred* F.B. *at the schoolhouse gate*, specifically based on his sex and gender.

    h.   The District has since taken inadequate steps to remediate the harm. His classmates and staff still treat him differently, as they view him as a threat. He has faced ostracism based on these allegations.

    i.   The District's refusal to address these harms has only further compounded the injury.

150.   The District has denied F.B. equal access to his education based on his sex and gender.

151.   The District's conduct is the direct and proximate cases of his harm and damages.

152.   Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

### COUNT 6
**42 U.S.C. § 1983--Denial of Procedural Due Process**
*K.B. and R.B. o/b/o F.B. v. the Unionville Chadds Ford District*

153.   Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

154.   The District violated F.B.'s rights to procedural due process under the Fourteenth Amendment when it did not afford him a fair disciplinary hearing before unlawfully removing him from school.

a.  Public schools are required to offer students a hearing process for disciplinary removals from school. *Goss v. Lopez*, 419 U.S. 565 (1975). Chapter 12, *et seq.* of the Pennsylvania School Code outlines the basic procedural requirements for providing students with procedural due process.

b.  On December 13, 2021, the District convened an informal hearing. Notably, the District did not send Parents notice by certified mail of the hearing. Instead, it emailed the Parents aon the afternoon of December 10.[5] This was the only notice that the District sent, belatedly, to the Parents. 22 Pa.§12(c) required that the District provide notice in advance of the hearing.

c.  22 Pa.§12(c)(2) afforded F.B. the right to examine and confront this witness. The District, however, did not produce any witnesses for F.B. to examine. As such, he had no way to confront his accuser.

d.  At the informal hearing, the District did not provide F.B. with all of the evidence against him in violation 22 Pa.§12(c)(1). Notably, the District did not provide the Plaintiffs with the female students' testimony; text messages from other students, including students on the crew team; and an exculpatory text message, which read "U said ur Thomas Holmes?." The District would not allow Parents to access this information prior to the hearing; rather, Dr. Conely simply read it out loud during the hearing. For example, Dr. Conley referenced the crew team's direct messages, but did not provide specific details and he did not read them into the record.[6]

---

[5] This was the first notice that Parents had received that gave the reason for the suspension.
[6] The Plaintiffs did not see them until months later, when they first learned about the "U said ur Thomas Holmes comment."

e.  The District further violated F.B.'s rights when it refused to state the evidence against him and when it refused to allow him the opportunity to review the evidence prior to the hearing.

f.  Initially, the District had a stenographer present at the informal hearing. However, the District dismissed the stenographer partway through the informal hearing. Because the District dismissed the stenographer early, it prevented F.B.'s witness from having their testimony transcribed. Here, Parents had a cyber crimes expert testify. However, because the District dismissed the stenographer, it did not transcribe their testimony. Absent this testimony, the District did not have to consider exculpatory and favorable evidence for F.B. Moreover, the District's decision was a *fait accomplii*.

g.  Additionally, the District predetermined the placement decision for F.B. to attend the AEDY before he was even able to present his own witness. In other words, the District presented evidence, made its determination, and then allowed Plaintiffs to present their witness.

h.  Defendants' conduct and failure to provide F.B. with procedural due process directly and proximately caused the deprivation of the constitutional right to attend school, absent discrimination based on sex and gender, together with the right to receive an education.

i.  22 Pa.§12(i)(c) required the District to place F.B. in his normal classes prior to any expulsion proceedings. The District violated this provision of the code by removing him from his class for five days prior to the hearing and without

following Chapter 12's process. Because the District did not follow Chapter 12's process, it excluded F.B. from school for seventeen days.

j.  The District further violated F.B.'s rights to procedural due process when it failed to comply with any of the Title IX Regulations prior to his removal from school, as set forth in 34 C.F.R. 106 *et seq.*

k.  Moreover, the District failed to follow any of the procedural requirements and/or the District substantially deviated from the process. This, notably, included excluding F.B. from school without fully affording him due process; allowing him to be represented by an attorney; and a public and/or Board of Education hearing, to name a few examples. Again, the District's disciplinary action involved excluding F.B. from school for an indefinite period, which exceeded ten days. Also, the District failed to provide proper notice of the specific reason for suspension (only that it would be felony if committed by an adult), and denied him access to evidence prior to hearing. Notice of the specific reason for suspension was given twenty-four business hours prior to hearing, which gave F.B. and his Parents inadequate time to prepare a defense. Furthermore, when F.B.'s witness, a cybercrimes expert, testified at the hearing, the District sent the transcriber out of the room.

l.  Because the District failed to afford F.B. with any procedural protections, it excluded him from school for seventeen days.

m.  The District was deliberately indifferent to the requirements of procedural due process.

155.    As a direct and proximate result of Defendants' willful conduct and deliberate

indifference, it violated his right to procedural due process and to attend school. The

District's deliberate refusal to comply with the procedural requirements resulted in F.B.'s

damages and his expulsion from school.

156.    Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in

the prayer for relief.

### COUNT 7
**42 U.S.C. § 1983** – Unconstitutional custom, policy or practice, resulting in
discrimination and a denial of his right to attend school.
*K.B. and R.B. o/b/o F.B. v. the Unionville Chadds Ford District*

157.    Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this

complaint and incorporate them herein.

158.    Defendants deprived Plaintiff of his  rights and privileges secured to him by the

Fourteenth Amendment by engaging in unconstitutional custom, policy, and practice:

a.    Defendants acted with deliberate indifference to the consequences when they

excluded Plaintiff from his education.

b.    The District and its administration, as supervisors, established and maintained a

policy, practice, or custom where they tolerated and oversaw the exclusion from

Plaintiff's education.

c.    Defendants' conduct directly caused deprivation of the constitutional right to

attend school absent discrimination based on sex and gender, together with the

right to receive an education.

d.    As a direct and proximate result of Defendants' willful conduct and deliberate

indifference, the District violated F.B.'s rights to attend school absent sex and

gender-based discrimination. Furthermore, the District denied F.B. the right to receive an education.

159.    Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

## **COUNT 8**
### **22 Pa.§ 12.1.--Denial of a Full and Free Education**
*K.B. and R.B. o/b/o F.B. v. the Unionville Chadds Ford District*

160.    Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

161.    22 Pa.§ 12.1 guarantees (a)  All persons residing in this Commonwealth between the ages of 6 and 21 years are entitled to a free and full education in the Commonwealth's public schools.

162.    The District denied F.B. the right to a free and full public education.

   a.  F.B. is a seventeen-year-old student who resides within the Commonwealth of Pennsylvania.

   b.  Parents enrolled F.B. at school, in his local education agency, which, in this case, is the Unionville Chadds Ford School District. The District is a school district under the supervision of the State Educational Agency in the Commonwealth of Pennsylvania.

   c.  From December 7 until January 7, 2022, the District denied F.B. access to his school in the general education learning environment. Rather than permitting him access to his same-age, typically-developing peers, the District offered him an AEDY or an online classroom. In no way, did these options amount to a full education.

      d.   By excluding F.B. from the learning environment, the District denied him any meaningful educational benefit.

163.    As a direct and proximate result of Defendants' refusal to grant F.B. access to his school environment, it denied him a full and free education in contravention of Pennsylvania law.

164.    The District has, therefore, both directly and proximately caused F.B. harm, together with concomitant damages.

165.    Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

### **COUNT 9**
### **NEGLIGENT HIRING, RETENTION, AND FAILURE TO TRAIN**
*K.B. and R.B. o/b/o F.B. v. the Unionville Chadds Ford District*

166.    Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

167.    The employer District knew or should have known about the employee Dr. Conely's incompetence.

      a.   Dr. Conley failed to comply with any of the legal requirements and procedures for school discipline and Title IX.

      b.   Dr. Conley was required to adhere to these procedural requirements.

      c.   Upon information and belief, the District failed to train and supervise Dr. Conley.

      d.   The District had an obligation to oversee, supervise, and train Dr. Conley to ensure that they upheld the rights of students to attend school.

      e.   The District failed to hire, train, and maintain staff, including Dr. Conley, who knew how to act as a reasonably prudent administrator: namely, not suspending

students who pose no threat prior to the completion of the Title IX investigation and without there being credible, competent evidence that they actually committed the threat; nor, a finding at a hearing that the student had violated the code of conduct; nor, an individualized threat assessment that determined he was an immediate threat.

    f.   Upon information and belief, the District failed to screen Dr. Conley for their competence and to ensure that Dr. Conley would not take steps to unlawfully exclude children from school.

168.    The harm to students, including F.B., was foreseeable.

169.    As a direct and proximate result of the District's negligent hiring, retention, and failure to train Dr. Conley, the Plaintiffs suffered damages.

170.    Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

### COUNT 10
### FALSE LIGHT
*K.B. and R.B. o/b/o F.B. v. the Unionville Chadds Ford District*

171.    Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

172.    The Defendant District placed F.B. in a false light when it publicized highly offensive statements/representations of him to the school community.

173.    The Defendant District acted with knowledge and a reckless disregard for the truth.

174.    As a direct and proximate result of all defendants presenting F.B. in a false light, he now has suffered reputational harm.

175.    As such,  F.B. has suffered damages.

176.   Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

<u>**COUNT 11**</u>
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
*F.B. v. the Unionville Chadds Ford District*

177.   Plaintiffs hereby reallege all matters set forth in the preceding paragraphs of this complaint and incorporate them herein.

178.   The District committed the tort of intentional infliction of emotional distress when:

a.   **The Defendant acted intentionally and recklessly:** Here, the Defendant, despite lacking any credible evidence that F.B. engaged in any of the alleged conduct, took steps to, nonetheless, falsely accuse him of egregious conduct; viz., threatening to shoot up his school and to rape a female classmate. The District candidly admitted that it lacked evidence, but removed him from school. The District blamed F.B. for this serious conduct, held him accountable, and treated him *as a sacrificial lamb* in the name of hastily punishing any student. The District, by its admission, had no evidence, but decided to intentionally and recklessly blame F.B., to hold him accountable, despite his innocence, and to deny him access to his education.

b.   The Defendant's conduct was extreme and outrageous, exceeding the bounds of decency and, thus, utterly intolerable in civilized society.

c.   The emotional distress Plaintiff suffered is so severe that no reasonable person could be expected to endure such distress.

d.   F.B. is now suffering emotional distress as a result of the Defendant's conduct, for which he is seeking medical/psychiatric treatment.

e.   F.B. has suffered damages as a result of the emotional distress.

179.   The Defendant's conduct is the direct and proximate cause of the Plaintiffs' damages.

180.   Wherefore, Plaintiffs pray for relief against the Defendants as hereinafter set forth in the prayer for relief.

## **DAMAGES**

181.   Plaintiffs suffered general, special, incidental, expectation, and consequential damages as the direct and proximate result of the acts and omissions of all Defendants, in an amount that shall be proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for the loss of enjoyment of life, both past and future; medical and medical-related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; lost wages, economic, and employment opportunities, both past and future,  and any and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court award him compensatory damages against the Defendant Unionville Chadds Ford School District, and all Defendants, for, including but not limited to, medical bills, lost wages, merit scholarship funding as a result of lower grades during and after the incident, lost college tuition costs to restore/repair, loss of future earnings, loss of enjoyment of life, emotional pain and suffering. Finally, Plaintiffs pray that the Court to order whatever relief it deems appropriate, together with reasonable attorneys' fees and costs of suit.

## <u>DEMAND FOR A JURY TRIAL</u>

In accordance with federal law, Plaintiffs hereby demand a trial by jury on all appropriate issues.

Respectfully submitted,

**MONTGOMERY LAW, PLLC**
1420 Locust Street, Suite 420
Philadelphia, PA 19102
***Attorneys for Plaintiffs***

Dated: December 2, 2023                     By:_____

Bradley R. Flynn, Esq.
PA Bar ID: 332730

# IN THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kevin B. and Renata B., | : | |
| Individually and as Parents and | : | |
| Natural Guardians of Minor, | : | |
| F.B., | : | |
| *Plaintiffs*, | : | |
| | : | Case No.   2:23-cv-4765 |
| V. | : | |
| | : | |
| The Unionville Chadds Ford , | : | |
| School District, Students TBD | : | |
| *Defendant.* | : | |
| | : | |
| | : | |

I, Kevin Brabank, the named Plaintiff and Parent and Natural Guardian of F.B., in the above-captioned case, declare under the penalty of perjury that the foregoing civil complaint is true and correct.

Kevin Brabank, Plaintiff

Executed on:  12/01/2023

# IN THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kevin B. and Renata B., | : | |
| Individually and as Parents and | : | |
| Natural Guardians of Minor, | : | |
| F.B., | : | |
| *Plaintiffs*, | : | |
| | : | Case No.   2:23-cv-4765 |
| v. | : | |
| | : | |
| The Unionville Chadds Ford , | : | |
| School District, Students TBD | : | |
| *Defendant*. | : | |
| | : | |
| | : | |

I, Renata Brabank, the named Plaintiff and Parent and Natural Guardian of F.B., in the above-captioned case, declare under the penalty of perjury that the foregoing civil complaint is true and correct.

*R Brabr*

Renata Brabank, Plaintiff

Executed on:  12/01/2023