IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN B. AND RENATA B., Individually and as Parents and Natural Guardians of Minor, F.B., | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 2:23-cv-04765 |
| v. | : : | |
| UNIONVILLE-CHADDS FORD SCHOOL DISTRICT, STUDENTS TBD | : : : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF DEFENDANT, UNIONVILLE-CHADDS FORD SCHOOL DISTRICT'S, MOTION TO DISMISS**

**FOX ROTHSCHILD LLP**
Mark W. Fitzgerald, Esquire
Beth N. Shore, Esquire
980 Jolly Road, Suite 110
Blue Bell, PA 19422-3001
Telephone:  (610) 397-6500
Fax:  (610) 397-0450
mfitzgerald@foxrothschild.com
bshore@foxrothschild.com
*Attorneys for Defendant,*
*Unionville-Chadds Ford School District*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. RELEVANT BACKGROUND ........................................................................................... 1

III. STANDARD OF REVIEW ................................................................................................. 3

IV. ARGUMENT ....................................................................................................................... 5

    A. Plaintiffs' Title IX Claims Must be Dismissed For Lack of Standing. .................... 5

    B. Plaintiffs' Section 1983 Claims Must be Dismissed For Lack of Standing. ........... 7

    C. The Dismissal of Plaintiffs' Federal Claims Justify Dismissal of Plaintiffs' State Law Claims. ...................................................................................................... 7

    D. Plaintiffs' Title IX Claims Must be Dismissed for Failure to State a Claim Upon Which Relief May be Granted. ...................................................................... 8

    E. Plaintiffs' Section 1983 Claims Must be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted. ............................................................. 9

        1. Count 5 Must be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted. ................................................................................... 10

        2. Count 7 Must be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted. ................................................................................... 11

    F. Plaintiffs' State Law Claims Must be Dismissed as Plaintiffs Lack Standing to Bring Them on Behalf of F.B., a Legal Adult. ................................................. 12

    G. Plaintiffs' Negligent Hiring, Retention, and Failure to Train Claim and False Light Claim Must be Dismissed. ............................................................................ 12

    H. Plaintiffs' Intentional Infliction of Emotional Distress Claim Must be Dismissed. ............................................................................................................. 13

V. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angelastro v. Prudential-Bache Sec., Inc.*,
    764 F.2d 939 (3d Cir. 1985) ................................................................................................ 1

*Anspach v. City of Philadelphia*,
    503 F.3d 256 (3d Cir. 2007) .......................................................................................... 4, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................... 5

*Blunt v. Lower Merion Sch. Dist.*,
    767 F.3d 247 (3d Cir. 2014) ............................................................................................ 11

*Brooks v. State College Area School Dist.*,
    No. 22-01335, 2023 WL 8722030 (M.D. Pa. Dec. 18, 2023) ................................... 10, 13

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997) ............................................................................................ 1

*Burrow ex rel. Burrow v. Postville Cmty. Sch. Dist.*,
    929 F. Supp. 1193 (N.D. Iowa 1996) ...................................................................... 6, 7, 8

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ........................................................................................................... 8

*City of St. Louis v. Praprotnik*,
    485 U.S. 112 (1988) ......................................................................................................... 10

*In re Corestates Trust Fee Litig.*,
    837 F. Supp. 104 (E.D. Pa. 1993), *aff'd*, *Byrd v. Corestates Bank, N.A.*, 39
    F.3d 61 (3d Cir. 1994) ....................................................................................................... 4

*Dipippa v. Union Sch. Dist.*,
    819 F. Supp. 2d 435 (W.D. Pa. 2011) ............................................................................... 6

*Doe v. Boyertown Area Sch. Dist.*,
    897 F.3d 518 (3d Cir. 2018) .............................................................................................. 6

*Doe v. The Trustees of the University of Pennsylvania*,
    270 F. Supp. 3d 799 (E.D. Pa. 2017) .......................................................................... 9, 14

*Doe v. University of the South*,
   687 F. Supp. 2d 744 (E.D. Tenn. 2009) ............................................................................... 7

*In re Donald J. Trump Casino Sec. Litig.*,
   7 F.3d 357 (3d Cir. 1993) .................................................................................................... 1

*Hassan v. City of New York*,
   804 F.3d 277 (3d Cir. 2015) ............................................................................................... 11

*Hoy v. Angelone*,
   554 Pa. 134 (1998) ............................................................................................................ 14

*Joyner v. School Dist. of Philadelphia*,
   313 F. Supp. 2d 495 (E.D. Pa. 2004) ................................................................................. 13

*Klump v. Nazareth Area School Dist.*,
   425 F. Supp. 2d 622 (E.D. Pa. 2006) ................................................................................. 13

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993) .................................................................................................... 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ............................................................................................................ 5

*Lopez v. Regents of Univ. of Cal.*,
   5 F. Supp. 3d 1106 (N.D. Cal. 2013) ................................................................................... 6

*Miller v. Redwood Toxicology Lab., Inc.*,
   688 F.3d 928 (8th Cir. 2012) ............................................................................................... 5

*Monell v. New York Department of Social Services*,
   436 U.S. 658 (1978) .......................................................................................................... 10

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ............................................................................................................ 5

*Packard v. Provident Nat'l Bank*,
   994 F.2d 1039 (3d Cir. 1993) .............................................................................................. 4

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
   998 F.2d 1192 (3rd Cir.1993) ............................................................................................. 1

*Phillips v. Cty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ..................................................................................... 4, 5, 10

*Reitz v. County of Bucks*,
   125 F.3d 139 (3d Cir. 1997) .............................................................................................. 10

154685633.2

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*
  311 F.3d 198 (3d Cir. 2002) ............................................................................................... 4

*Seiwert v. Spencer-Owen Cmty. Sch. Corp.*,
  497 F. Supp. 2d 942 (S.D. Ind. 2007) ............................................................................... 6

*Shaw v. Digital Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996) ............................................................................................. 1

*Watson v. Abington Twp.*,
  478 F.3d 144 (3d Cir. 2007) ............................................................................................ 10

*Welchel v. Cameron R-I School Dist.*,
  No. 5:19-06012, 2019 WL 13297938 (W.D. Mo. Nov. 13, 2019) .................................... 8

*Whren v. United States*,
  517 U.S. 806 (1996) ........................................................................................................ 11

*Yusuf v. Vassar College*,
  35 F.3d 709 (2d Cir. 1994) ................................................................................................ 9

**Statutes**

231 Pa. C.S.A. § 2002 .......................................................................................................... 12

42 Pa.C.S. § 8541(b)(1)-(9) .................................................................................................. 13

20 U.S.C. § 1681(a) ................................................................................................................ 5

28 U.S.C. § 1367(a), (c)(3) .................................................................................................... 8

Pennsylvania's Political Subdivision Tort Claims Act ........................................................ 13

**Other Authorities**

Fed. R.Civ. P. 12(b)(1) ........................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 4

Fed. R. Civ. P. 17(a) ............................................................................................................. 12

Fed. R. Civ. P. 17(c) ............................................................................................................. 12

Rule 12 .................................................................................................................................... 4

154685633.2

**I.      INTRODUCTION**

Plaintiffs' complaint is fatally flawed and must be dismissed in its entirety for lack of standing, lack of jurisdiction, and a lack of facts to support any of Plaintiffs' spun-from-whole-cloth allegations that the Unionville-Chadds Ford School District ("District") discriminated against F.B., a student in the District, on the basis of his gender when it barred him from campus after receiving information that he was the likely perpetrator behind an anonymous message in the school, threatening "Bullets Will Fly."

**II.     RELEVANT BACKGROUND**

Plaintiffs are the parents and natural guardians of F.B., who is now a twelfth-grade student in the District. (Complaint, ECF No. 1 at ¶¶ 18; 20). Student turned 18 in October 2023. (Exhibit "A")[1].

On October 8, 2021, when F.B. was a tenth-grade a student, a handwritten message was discovered on the wall of the third-floor boys' bathroom at Unionville High School ("UHS"), the District's high school. The message read, "10-8-21 Bullets Will Fly." (ECF No. 1 at ¶21). As of December 2021, a perpetrator had not been identified. (ECF No. 1 at ¶21).

---

[1]     Although as a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *Angelastro v. Prudential-Bache Sec., Inc*., 764 F.2d 939, 944 (3d Cir. 1985), an exception to the general rule is that a "document *integral to or explicitly relied upon* in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp*., 82 F.3d 1194, 1220 (1st Cir. 1996) (emphasis added)); *see also In re Donald J. Trump Casino Sec. Litig*., 7 F.3d 357, 368 n. 9 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3rd Cir.1993)). Student's transcript is explicitly referenced in paragraph 20 of the Complaint, discussing Student's coursework in the District.

1

On December 6, 2021, while in gym class, a female student at UHS, received multiple messages on the social media platform Instagram from a username identified as "Georg Gerhart Eisler," a name that was unknown to the student. In these messages, the sender threatened to rape the student, stating among other things, "C u on the bus[.]" (ECF No. 1 at ¶23). The sender also claimed responsibility for the October 8. 2021 shooting threat that was written on the boys' bathroom wall, writing "That thing on the stall[,]" "The threat they found[,]" "Cancelled the football game[,]" "That was me[,]" "Didn't get punished[.]" The student responded to the sender asking if this was "F," referring to F.B. The sender responded along the lines of, "yes, you got me" and sent a picture of a hairline and forehead. (ECF No. 1 at ¶¶25-26). Soon after, the student reported the messages to school administrators. The student shared with the school administrators that F.B. rides her bus and she believed the photographs could be F.B. She also shared that she did not want to ride on the bus that day if F.B. was also on the bus because she was scared. (ECF No. 1 at ¶47).

In response to the student's report, school administrators contacted the police and had F.B. come to the principal's office while they reached out to Plaintiffs. School administrators requested that F.B. participate in virtual instruction the following day, December 7, 2021, and Plaintiffs agreed. On December 7, 2021, as the District was still investigating the source of the messages, the UHS vice principal discussed with Plaintiffs that they expected F.B. to attend school virtually the following day as well. (Exhibit "B").[2] Plaintiff Kevin B. responded that night, requesting "a clearly stated justification for [the school's] action." Plaintiff Kevin B. then emailed the vice principal, stating that unless the school suspended F.B., F.B. would be attending school in person the following day. *Id.*

---

[2] This email chain is referenced in Paragraphs 49 and 50 of the complaint and is therefore integral to the complaint.

On December 8, 2021, UHS suspended F.B. until December 20, 2021, for a Level 4 Offense: Criminal Behavior (conduct that if committed by an adult, would constitute a felony or misdemeanor under the prevailing laws of the Commonwealth of Pennsylvania), for allegedly making a terroristic threat, the threat on the bathroom wall. (ECF No. 1 at ¶¶49; 51). On the same day, an informal hearing on the suspension was scheduled for December 13, 2021. (ECF No. 1 at ¶58). At the informal hearing on December 13, 2021, the UHS administration presented its evidence. The parties also discussed the possibility of F.B. temporarily attending an alternative educational program until the investigation concluded. (ECF No. 1 at ¶¶58; 81; 86). The UHS principal also suggested another option whereby F.B. would be permitted to attend all of his classes online, abating his suspension so long as F.B. would not enter school grounds during school hours. F.B. agreed, and the suspension was lifted. *Id.*

On January 6, 2022, following the results of the police investigation, F.B. was cleared of potential wrongdoing. (ECF No. 1 at ¶89). The police determined F.B.'s fingerprints did not match those recovered from the UHS boys' bathroom, and data provided by Instagram implicated a different minor from Philadelphia, who had no known association with UHS or F.B. (ECF No. 1 at ¶¶44; 82-83). The very next day, January 7, 2022, F.B. was permitted to return to school. (ECF No. 1 at ¶88-89).

### III.   STANDARD OF REVIEW

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, "the person asserting jurisdiction bears the burden of showing that the case is properly before the Court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates*

3

*Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, *Byrd v. Corestates Bank, N.A.*, 39 F.3d 61 (3d Cir. 1994).

A motion made under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint such that it fails to state a claim upon which relief can be granted. In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all facts alleged in the complaint as true and the plaintiff must be given the benefit of every favorable inference that can be drawn from those allegations. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *see also Phillips v. Cty. of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig*. 311 F.3d 198, 215-16 (3d Cir. 2002)). "The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *Id.*

The plaintiff's conclusory allegations and legal conclusions, however, do not enjoy the same assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Anspach v. City of Philadelphia*, 503 F.3d 256, 260 (3d Cir. 2007) (recognizing that conclusory allegations or legal conclusions masquerading as factual allegations will not prevent dismissal). Thus, a court must dismiss, where as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, the Complaint must set forth "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation*." Phillips*, 515 F.3d at 234-35. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint should be dismissed. *See Iqbal*, 556 U.S. at 678-79.

4

### IV. ARGUMENT

#### A. Plaintiffs' Title IX Claims Must be Dismissed For Lack of Standing.

Plaintiffs as the Parents of F.B., do not have standing to assert a claim under Title IX, individually, or on behalf of their adult child, F.B. "When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012). To bring a cause of action under Title IX, as with any statutory claim, the plaintiff must have statutory standing. To have statutory standing, the plaintiff must show that their "interests fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (internal quotation marks and citation omitted). Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Courts have recognized that "Title IX was drafted to cover 'any person,' not just any student." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 533 (3d Cir. 2018). Even so, the reach of Title IX's protections is not boundless. Parents lack standing to bring their own Title IX claims where they have not been personally subjected to discrimination under an educational program or activity. *See, e.g.*, *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1114 (N.D. Cal. 2013) ("[I]n general, non-students such as parents do not have a personal claim under Title IX."); *Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 954 (S.D. Ind. 2007) ("Title IX only protects against actions that interfere with educational opportunities or activities. Because there are no educational opportunities or activities that the parents are excluded from, they have no claim").

Even if parents individually do not have standing to bring a claim under Title IX, they may have standing to raise Title IX claims on behalf of their children. For instance, parents are permitted to bring Title IX claims on behalf of their minor children or their deceased adult children. *See Dipippa v. Union Sch. Dist.*, 819 F. Supp. 2d 435, 446 (W.D. Pa. 2011) (finding that parents had standing to bring claims on behalf of their minor child); *Lopez*, 5 F. Supp. 3d at 1114 (finding that parents of a deceased adult child had standing to bring a Title IX suit on behalf of their deceased child). This standing does not extend, however, to parents filing Title IX claims on behalf of an adult child who is alive and able to bring their own Title IX claims, like F.B. here. *Burrow ex rel. Burrow v. Postville Cmty. Sch. Dist.*, 929 F. Supp. 1193, 1199 (N.D. Iowa 1996) (granting summary judgment against the parents of a child because the child was not a minor and neither of her parents were students at the high school nor where they personally excluded from, denied the benefits of or subjected to discrimination under an educational program or activity within the meaning of Tile IX).

Plaintiffs do not have standing to bring their Title IX claims because they have not alleged any facts to demonstrate that they have been personally excluded from, denied the benefits of, or subjected to discrimination under an educational program or activity within the meaning of Title IX. Although framed throughout the complaint as claims on behalf of themselves and F.B., all of the allegations concern F.B.'s rights under Title IX. And because F.B. is 18 years-old, Plaintiffs Kevin B. and Renata B. may not bring claims on F.B.'s behalf.  Because F.B. has reached a majority age, he may bring the Title IX claims in his own right, making it unnecessary, and in fact, improper for Plaintiffs to assert F.B.'s Title IX claims on his behalf. *Doe v. University of the South*, 687 F. Supp. 2d 744, 759 (E.D. Tenn. 2009) (Dismissing plaintiff parents' Title IX claims with prejudice because their child had attained the age of majority); *Burrow*, 929 F. Supp. 1193 at 1200

6

(Granting summary judgment dismissing plaintiff parents' Title IX claims, reasoning "since [student] has attained a majority age, she may bring the present action in her own right, making it unnecessary for her Parents to assert Lisa's Title IX claims on her behalf."). As Plaintiffs are without standing under Title IX to bring any of the Title IX claims in the complaint, Counts 1 through 4 of the complaint, arising under Title IX, must be dismissed.

### B. Plaintiffs' Section 1983 Claims Must be Dismissed For Lack of Standing.

Counts 5 through 7 of the complaint allege claims under Section 1983. All three counts, Count 5, alleging a denial of equal protection, Count 6, alleging a denial of procedural due process, and Count 7, alleging an unconstitutional custom policy or practice resulting in discrimination, are about F.B.'s rights under Section 1983. Plaintiffs do not raise any individual claims, nor do they have standing to bring Section 1983 claims on behalf of F.B. because he has reached the legal age of majority. This issue, like Plaintiffs' standing to bring Title IX claims on behalf of F.B., was addressed in *Burrow*, in which the Court found that parents lacked standing to bring individual claims under Section 1983 based upon a deprivation of the student's constitutional rights where student had reached majority age. *Burrow*, 929 F. Supp. at 1208; *see also Welchel v. Cameron R-I School Dist.*, No. 5:19-06012, 2019 WL 13297938 at *5 (W.D. Mo. Nov. 13, 2019). Accordingly, Plaintiffs' Section 1983 claims must be dismissed for lack of standing.

### C. The Dismissal of Plaintiffs' Federal Claims Justify Dismissal of Plaintiffs' State Law Claims.

Although federal courts with original jurisdiction over a federal claim have supplemental jurisdiction over state claims that form "part of the same case or controversy," a court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(a), (c)(3). It is appropriate for a court to decline the exercise of supplemental jurisdiction if the litigation is in its early stages, and

7

where the complaint asserts federal question jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Because the complaint asserts federal question jurisdiction and there is not even one viable federal claim in the complaint, the court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss them for lack of jurisdiction. Accordingly, Counts 8 through 11 of the complaint, Plaintiffs' state law claims, should be dismissed for lack of subject matter jurisdiction.

### D.  Plaintiffs' Title IX Claims Must be Dismissed for Failure to State a Claim Upon Which Relief May be Granted.

Plaintiffs' Title IX claims are premised on mere speculation, not fact. The entire underpinning of Plaintiffs' Title IX claims is Plaintiffs' allegation that the District latched onto F.B. as the perpetrator behind the messages to A.J. and the threat on the bathroom wall based on "stereotype that he, as a young man, is a threat to his female classmates." (Complaint, ECF No. 1 at ¶110(d)). Plaintiffs have not alleged any facts to support this bold conclusion. The mere fact that F.B. is male does not mean that the District targeted him *because* he is a male, and Plaintiffs have not alleged any facts to support—or even suggest—that this is what occurred. In asserting that gender bias was the reason for the District's exclusion of F.B. from school, Plaintiffs have not alleged any facts to support their claims of gender bias. (Complaint, ECF No. 1 ¶110). Because Count 1 of the complaint is littered with conclusions of law but few facts, Plaintiffs have failed to allege a claim sufficient to survive a motion to dismiss, and Count 1 should be dismissed for failure to state a claim upon which relief can be granted.

So, too, with respect to Count 3 of the complaint, in which Plaintiffs contend that under the "erroneous outcome theory" of discrimination under Title IX, the District's incorrect determination of F.B.'s culpability as the author of the bathroom wall threat "was the result of gender bias based on the stereotype of men being more prone to sexual violence" (Complaint, ECF

8

No. 1 at ¶127). Once again, Plaintiffs have failed to allege any facts to demonstrate or even suggest that the District's incorrect determination was the result of gender bias. Plaintiffs further suggest that the District's erroneous conclusion was a "predetermined" result stemming, from the District's "gender bias" that led to the District's "rushed" investigation and failure to "follow exculpatory leads" and failure to "disclose exculpatory evidence." *Id.* at ¶¶126-127. Yet, "'allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss.'" *Doe v. The Trustees of the University of Pennsylvania*, 270 F. Supp. 3d 799, 822 (E.D. Pa. 2017) (quoting *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994)). "Rather, to state a claim upon which relief can be granted under an erroneous outcome theory, a plaintiff must allege "'particular circumstances suggesting that gender bias was a motivating favor behind the erroneous finding.'" *Trustees*, 270 F. Supp. 3d at 823 (citations omitted). As Plaintiffs have not alleged any circumstances, much less particular ones, suggesting that gender bias was a motivating factor behind the District's erroneous finding, Plaintiffs cannot state a claim upon which relief can be granted under the erroneous outcome theory of liability of Title IX. Accordingly, Count 3 must also be dismissed.

### E. Plaintiffs' Section 1983 Claims Must be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted.

Section 1983 provides a procedural vehicle for private plaintiffs to enforce the Constitution when they suffer violations under color of state law. The first hurdle to a Section 1983 claim against a municipality is ordinarily to show that "the constitutional deprivation was caused by a person acting under state law." *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). A municipality is a "person" who can be liable under Section 1983, but critically, a municipality "can only be liable for its own actions; it cannot be vicariously liable for the actions of its

employees." *Brooks v. State College Area School Dist.*, No. 22-01335, 2023 WL 8722030 at *11 (M.D. Pa. Dec. 18, 2023) (citing *Monell v. New York Department of Social Services*, 436 U.S. 658, 690 (1978)). Put differently, a municipality can be liable for a violation of Section 1983 if it has engaged in "unconstitutional practices which are 'so permanent and well settled as to constitute a custom or usage with the force of law' as well as acts by the municipal body itself, and a failure to train demonstrating 'deliberate indifference' towards the constitutional violations caused by its employees." *Brooks*, 2023 WL 8722030 at *11 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 117 (1988); *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007); *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)).

Plaintiffs have not alleged any facts sufficient to demonstrate unconstitutional practices on the part of the District. Rather, Plaintiffs' claims are limited to UHS administrators' actions as individuals, actions which were dictated by the circumstances at issue and did not reflect a District practice or an action by the District as a municipality. (Complaint, ECF No. ¶¶ 149; 154; 158).

    1. *Count 5 Must be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted.*

Count 5 alleges a denial of equal protection, yet Plaintiffs have not alleged any facts sufficient to sustain this claim. The Equal Protection Clause protects against, among other things, the selective enforcement of a statute or policy where such enforcement decisions are based on an unjustifiable standard, such as gender. *Whren v. United States*, 517 U.S. 806, 813 (1996). A plaintiff seeking redress for an equal protection violation must allege that the treatment he received was different from that received by other similarly situated individuals. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014). The plaintiff must also allege that the discriminatory treatment was purposeful or intentional. *Id*; *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015). Significantly, it is not enough that a plaintiff alleges that he is a member of a protected

10

class and that a statute or policy was enforced against his protected class more than any other group. *Hassan*, 804 F.3d at 294. Instead, he must allege that his membership in the protected class was a substantial factor in the differential treatment. *Id.*

Plaintiffs have not alleged any facts to demonstrate that F.B. was denied access to school because he is a male. Nor have they alleged any facts to demonstrate that the District "excluded him from school" "based on the pernicious stereotype of him being a rapist." (Complaint, ECF No. 1 at ¶149). By Plaintiffs' own admission, Student was denied access to in-person instruction based on the District's charge that F.B. had made a terroristic threat, not because the District viewed him as a "rapist." (Complaint, ECF No. 1 at ¶37). Just as Plaintiffs have not alleged any facts to support their bald, conclusory allegations that F.B. was denied access to school based on his gender, Plaintiffs likewise have failed to allege any facts to even suggest that F.B. was treated differently from other students because of his gender. The fact of the matter is that F.B. was identified as the individual who made a terroristic threat on the wall of the boys' bathroom, and the District had evidence to support that determination. The fact that he is a male had nothing to do with the District's treatment of the situation, nor have Plaintiffs alleged anything beyond mere speculation to suggest that it did. Accordingly, Count 5 must be dismissed for failure to state a claim upon which relief can be granted.

      2.    *Count 7 Must be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted.*

Plaintiffs have not alleged any facts to demonstrate that F.B.'s exclusion from in-person education reflected an unconstitutional custom, policy or practice, resulting in discrimination and a denial of F.B.'s right to attend school. Plaintiffs merely allege some of the elements that could demonstrate an unconstitutional custom, policy or practice, without alleging any facts, merely stating "Defendants acted with deliberate indifference to the consequences when they excluded

11

Plaintiff from his education" and "the District and its administration, as supervisors, established a policy practice, or custom where they tolerated and oversaw the exclusion from Plaintiff's education." (Complaint, ECF No. 1 at ¶¶158(a); (b)). Quite simply, this is not enough for Plaintiffs' claim to survive dismissal at the motion to dismiss stage. *Anspach*, 503 F.3d at 260 (internal citations omitted) ("'[L]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'") Accordingly, Count 7 must be dismissed for failure to state a claim upon which relief can be granted.

> F. **Plaintiffs' State Law Claims Must be Dismissed as Plaintiffs Lack Standing to Bring Them on Behalf of F.B., a Legal Adult.**

Under Federal Rule of Civil Procedure 17(a), only the real party in interest may prosecute an action. While there are certain limited exceptions to this Rule, none are applicable here given that F.B. has reached the age of majority under Pennsylvania law. Fed. R. Civ. P. 17(c); *see also* 231 Pa. C.S.A. § 2002. Counts 8, 9, 10, and 11 must therefore be dismissed.

> G. **Plaintiffs' Negligent Hiring, Retention, and Failure to Train Claim and False Light Claim Must be Dismissed.**

Even if this Court decided to exert jurisdiction over Plaintiffs' state law claims, Count 9 of the complaint, alleging negligent hiring, retention, and failure to train the principal of UHS, and Count 10, alleging a false light claim, must be dismissed as a matter of law because these claims are barred under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"). The PSTCA codifies municipal bodies' sovereign immunity under Pennsylvania state law. The PSTCA bars any state tort claims against municipal bodies, such as the District, unless those state tort claims fall within one of nine narrowly defined waivers of immunity. The District is entitled to the immunity protections of the PSTCA because public school districts are local agencies entitled to this protection. *See, e.g.*, *Joyner v. School Dist. of Philadelphia*, 313 F. Supp. 2d 495, 504 (E.D. Pa. 2004). These nine waivers of immunity of the PSTCA pertain to vehicle liability; care, custody

12

or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; care, custody or control of animals; and sexual abuse—none of which are implicated here. 42 Pa.C.S. § 8541(b)(1)-(9); *see also Brooks*, 2023 WL 8722030 at *8 (dismissing with prejudice plaintiffs' claims for alleged negligent hiring, training, retention, and/or supervision of school district staff under the PSTCA); *Klump v. Nazareth Area School Dist.*, 425 F. Supp. 2d 622, 636 (E.D. Pa. 2006) (dismissing plaintiffs' claim against the defendant school district for invasion of privacy by placing plaintiff in a false light under the PSTCA). Accordingly, Counts 9 and 10 of the Complaint must be dismissed with prejudice.

### H. Plaintiffs' Intentional Infliction of Emotional Distress Claim Must be Dismissed.

Should this Court decide to exert jurisdiction over Plaintiffs' state law claims, Count 11 of the complaint, alleging intentional infliction of emotional distress ("IIED"), must be dismissed for failure to state a claim upon which relief may be granted because Plaintiffs have failed to allege extreme or outrageous conduct sufficient to support such a claim. To establish an IIED claim under Pennsylvania law, a plaintiff must show that (1) the defendant's conduct was extreme or outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the plaintiff's distress is severe. *Doe v. The Trustees of the University of Pennsylvania*, 270 F. Supp. 3d 799, 827 (E.D. Pa. 2017) (citations omitted). Under this standard, Pennsylvania courts have found "sufficient basis" for an IEED claim only when "presented [with] the most egregious conduct." *Hoy v. Angelone*, 554 Pa. 134, 151 (1998) (citations omitted). This conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (citation omitted). Plaintiffs IIED claim must be dismissed because Plaintiffs have not alleged the type of "desperate and ultra extreme conduct" that is "beyond all possible bounds of decency" such that it gives rise

13

to an IIED claim. In *Doe v. The Trustees of the University of Pennsylvania*, the plaintiff student asserted a claim for IIED, alleging that the defendant university had distorted the facts of his and a female student's sexual encounter, improperly attacked plaintiff's credibility, unjustifiably branded plaintiff a rapist, threatened plaintiff with expulsion when expulsion was not justified, and ultimately imposed an unfair sanction. *Trustees of Univ. of Pennsylvania*, 270 F. Supp. 3d at 827. The court dismissed plaintiff's IIED claim, reasoning that "[s]uch conduct, however, even if objectionable, is simply not the type of 'desperate and ultra extreme conduct' that is 'beyond all possible bounds of decency' such that it gives rise to an IIED claim in Pennsylvania." *Id.*

Here, Plaintiffs' allegations are even less extreme than the alleged conduct in *Doe v. Trustees of The University of Pennsylvania.* Plaintiffs contend that the District committed the tort of intentional infliction of emotional distress against F.B. when it temporarily—for a period of 17 school days—excluded Student from in-person instruction as a result of evidence Plaintiffs claim stemmed from a flawed investigation, indicating that Student was the author of a threat to shoot up the school. (Complaint, ECF No. 1 at ¶¶177; 21-27; 81-83). Even assuming Plaintiffs' allegations are correct—that the District failed to thoroughly investigate the messages and therefore improperly determined that F.B. was responsible for writing the threat on the bathroom wall—this conduct, and F.B.'s subsequent exclusion from in-person instruction does not rise to the level of "desperate and ultra extreme conduct" that is "beyond all possible bounds of decency" to sustain an IIED claim against the District. Accordingly, Count 11 must be dismissed.

## V. **CONCLUSION**

For all of these reasons, Defendant, Unionville-Chadds Ford School District, respectfully requests that the Court dismiss the complaint.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: /s/ *Mark W. Fitzgerald*
Mark W. Fitzgerald, Esquire
Beth N. Shore, Esquire
980 Jolly Road, Suite 110
Blue Bell, PA 19422-3001
Telephone: (610) 397-6500
Fax: (610) 397-0450
mfitzgerald@foxrothschild.com
bshore@foxrothschild.com
*Attorneys for Defendant,*
*Unionville-Chadds Ford School District*

Dated: February 6, 2024